UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
AMERICAN LANDS ALLIANCE, et al.,    )
)
    Plaintiffs,    )
)
    v.    )    Civil Action No. 00-2339 (RBW)
)
GALE A. NORTON,    )
Secretary of the Department of the Interior,    )
et al.,    )
)    **FILED**
    Defendants.    )
)    **JAN 3 1 2003**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## <u>MEMORANDUM OPINION</u>

    This matter comes before the Court on plaintiffs' (American Lands Alliance, The Larch

Company, and Sinapu) lawsuit against the Secretary of the Department of the Interior

("Secretary") and the Director of the United States Fish and Wildlife Service ("FWS"), in their

official capacities, which seeks both declaratory and injunctive relief, and alleges violations of

the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, <u>et seq.</u> (2000), and the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (2000). At the heart of the parties' dispute is the

interaction of the two methods by which fish, wildlife, and plant species can be listed as an

"endangered" or "threatened" species under the ESA.[1] These two methods are either an internal

initiative that is instituted by the FWS itself (the "internal process") or an external initiative that

is instituted by a petition submitted by the public (the "petition process"). 16 U.S.C. § 1533. On

---

[1] The ESA defines "endangered species" as those that are "in danger of extinction throughout all or a significant part of [their] range[,]" 16 U.S.C. § 1532(6), and "threatened species" as those "species which [are] likely to become an endangered species within the foreseeable future throughout all or a significant portion of [their] range[,]" 16 U.S.C. § 1532(20).



37

January 25, 2000, the plaintiffs, along with several other petitioners, submitted a petition to the

Secretary to list the Gunnison sage grouse (Centrocercus minimus) as an endangered species

under the ESA.  Plaintiffs' Material Facts Not in Dispute ("Pls.' Mat. Facts"), Exhibit ("Ex.") E

("Status Review and Petition to List the Gunnison Sage Grouse").  The defendants responded to

the plaintiffs' petition by informing them that "[o]n January 19, 2000, the Regional Director of

the Mountain-Prairie Region of the FWS initiated the placement of the Gunnison sage grouse on

the FWS's 'candidate' list by signing a 'Candidate and Listing Priority Assignment Form.'"  Pls.'

Mat. Facts at ¶3 (citing Pls.' Mat. Facts, Ex. B).  Thus began the debate that has given rise to the

instant cause of action.  At issue is: (1)  whether the FWS's treatment of a species in its own

internal process satisfies the requirements that the FWS must adhere to when considering a

petition submitted by the public requesting the listing of a species as "endangered" or

"threatened" under the ESA; (2) whether the defendants violated the "notice and comment"

provisions of either the ESA or the APA when promulgating their guideline that treats such

public petitions as "redundant" once a species has been identified as a candidate within the

FWS's internal listing process; and (3) whether this guideline substantively violates

Congressional requirements mandated in the ESA.  Because the Court concludes that the FWS

cannot ignore the specific requirements of the ESA when a petition is submitted by the public,

even when an internal process has already been initiated by the FWS, and that the guideline the

FWS relies upon as the basis for ignoring the ESA is both procedurally and substantively flawed,

the Court must award summary judgment to the plaintiffs.[2]

---

[2]  While the plaintiffs' complaint seeks both declaratory and injunctive relief, their summary judgment
motion only seeks a declaratory judgment holding that the defendants have violated the ESA and an order directing

(continued...)

## I.      Background

A brief description of the reasons for the enactment of the ESA, the two methods by which a species can be listed as "endangered" or "threatened" under the ESA, the FWS's Endangered Species Petition Management Guidance policy, the Gunnison sage grouse, and the underlying facts of this case is necessary prior to addressing the legal merits of the parties' positions.

### (A)      The Endangered Species Act and the Two Listing Methods

The Supreme Court has commented that the ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Auth. v. Hill, 437 U.S. 153, 180 (1978). Congress explained that the purpose underlying the ESA is "to provide a means whereby the ecosystem upon which endangered species and threatened species depend may be conserved" and declared that it was "the policy of Congress that all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this chapter." 16 U.S.C. § 1531(b), (c). In Tennessee Valley Authority, the Supreme Court went on to note that "[t]he plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost. This is reflected not only in the stated policies of the Act, but in literally every section of the statute." 437 U.S. at 184.

----

[2](...continued)
the defendants to comply with the ESA in this case.  At the hearing this Court has scheduled to address the relief it has ordered, the Court will inquire whether the plaintiffs are still seeking injunctive relief.

**(1)**     **The Two ESA Listing Methods**

**(i)**     **The Internal Process**

As briefly mentioned above, there are two methods by which a species can be listed as "endangered" or "threatened" under the ESA: the internal process and the petition process. First, the Secretary may initiate a review of whether a species is eligible for listing as "endangered" or "threatened". When determining whether to list a species, the Secretary must consider "any of the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). If the Secretary determines that a species should be listed under the ESA "on the basis of the best scientific and commercial data available[,]" 16 U.S.C. § 1533(b)(1)(A), then she must publish a proposed rule in the Federal Register, 16 U.S.C. § 1533(b)(5); 50 C.F.R. § 424.11(c). Thereafter, an opportunity for public comment must be afforded, 16 U.S.C. § 1533(b)(5), and within one year the Secretary must either publish a final rule or withdraw the proposed rule, 16 U.S.C. § 1533(b)(6)(A); 50 C.F.R. § 424.17(a). The Secretary may extend this one-year period by "not more than six months for purposes of soliciting additional data" by publishing a notice in the Federal Register if she finds that "there is substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned . . ." 16 U.S.C. § 1533(b)(6)(B)(i); see 50 C.F.R. § 424.17(a)(iv).

The Secretary also has the option of designating the species as a "candidate species[,]" which means that the species is "being considered by the Secretary for listing as an endangered or

4

threatened species, but [is] not yet the subject of a proposed rule." 50 C.F.R. § 424.02(b).

Although, as recognized by the Ninth Circuit in Center for Biological Diversity v. Norton, 254

F.3d 833, 835 (9th Cir. 2001), this "candidate" status is not expressly provided for in the ESA,

the Secretary's regulations recognize that a species will be categorized as a "candidate" if "listing

may be warranted, but that the available evidence is not sufficiently definitive to justify

proposing the action at that time." 50 C.F.R. § 424.15(a). This regulation further provides that

the Secretary "from time to time" may update the review status of the species that are candidates

for listing. 50 C.F.R. § 424.15(b). However, the regulation is clear that "none of the substantive

or procedural provisions of the Act apply to a species that is designated as a candidate for

listing." Id.   Therefore, once a species is listed as a "candidate" through the internal process,

there is "no specific time frame during which the Secretary must act on the substantive or

procedural provisions of the Act . . ." Id.

(ii)   <b><u>Petition Process</u></b>

The second method by which a species may be listed under the ESA as "endangered" or

"threatened" is through the submission of a petition by the public. Upon receiving such a

petition, the Secretary,

> [t]o the maximum extent practicable, within 90 days . . . shall make a finding
> as to whether the petition presents substantial scientific or commercial
> information indicating that the petitioned action may be warranted. If such a
> petition is found to present such information, the Secretary shall promptly
> commence a review of the status of the species concerned. The Secretary shall
> promptly publish each finding made under this subparagraph in the Federal
> Register.

16 U.S.C. § 1533(b)(3)(A). Within 12 months after receiving this petition, the Secretary must

determine either that

5

(1) the petitioned action is warranted, in which case she must publish a
proposed rule designating the species for protection; (2) the petitioned action
is not warranted; or (3) the petitioned action is warranted but immediate
promulgation of a rule is precluded by other pending proposals.  If the
Secretary finds that action is 'warranted but precluded,' she must promptly
publish that finding along with 'a description and evaluation of the reasons
and data on which the finding is based.'

Ctr. for Biological Diversity, 254 F.3d at 835 (quoting 16 U.S.C. § 1533(b)(3)(B)).  If the

Secretary publishes a "warranted but precluded" finding, the FWS must effectively review this

finding each year until final action is taken.  See 16 U.S.C. § 1533(b)(3)(C)(i) (once the Secretary

publishes a "warranted but precluded" finding, the petition "shall be treated as a petition that is

resubmitted to the Secretary under subparagraph (A) on the date of such finding and that presents

substantial scientific or commercial information that the petitioned action may be warranted.").

Finally, it is important to note that findings that a petition is not warranted or "warranted but

precluded" are subject to judicial review.  16 U.S.C. § 1533(b)(3)(C)(ii).

**(B)     The Petition Management Guidance Policy**

Central to this case is the Petition Management Guidance ("PMG") policy adopted by the

FWS in 1996.  The PMG instituted a new policy regarding how the FWS would treat public

petitions, which states that

[a] petition for an action on a species or critical habitat 'identical' or 'equivalent'
to a petition still pending (or active) requires only a prompt (i.e., within 30 days)
response informing the submitter of the prior petition and its status; Federal
Register publication of this response is not required.  The second petition is
treated as a comment on the previous petition.  The Fish and Wildlife Service
now defines 'candidate species' as one for which sufficient information is
available to indicate that a listing proposal is appropriate.  A petition for a
candidate species for which the Fish and Wildlife Service has lead, inasmuch as
the Service has already made a decision regarding the species status and assigned
it a listing priority, the Service considers such candidate species as under petition
and covered by a 'warranted but precluded' finding under Section 4(b)(3)(B)(iii) of

6

the Act.  Therefore, a petition to list a candidate species is redundant and will be
treated as a second petition.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in

Support of Defendants' Cross-Motion for Summary Judgment ("Defs.' Mot."), Ex. 1, Ex. 1 at 5

("Endangered Species Petition Management Guidance") (emphasis in the original).  As this Court

will address more substantively below, this policy allows the FWS to ignore public petitions by

treating them as "redundant" if the petitioned species has already been identified internally as a

candidate and assigned a listing priority because under this policy the FWS considers such

species "as under petition and covered by a 'warranted but precluded' finding[.]"  Id.

**(C)**     **The Gunnison sage grouse**

While studying the sage grouse in 1977, it was discovered that "wings collected in the

Gunnison Basin of southwestern Colorado were smaller than sage grouse wings collected in

northern Colorado."  65 Fed. Reg. 82,310, 82,311 (Dec. 28, 2000) ("Notice of Designation of the

Gunnison Sage Grouse as a Candidate Species").  After two decades of studying the differences

between the sage grouse population, the American Ornithologists' Union determined that the sage

grouse found in southwestern Colorado are a distinct species from those found in northern

Colorado, and the sage grouse are now distinctly grouped into two separate species:  Gunnison

sage grouse (Centrocercus minimus) and Northern sage grouse (Centrocercus urophasianus).  65

Fed. Reg. at 82,311; Pls.' Mat. Facts, Ex. E at 2-3.  While previously occupying parts of

southwestern Colorado, southwestern Kansas, northwestern Oklahoma, northern New Mexico,

northeastern Arizona, and southeastern Utah, today, it is currently believed that the Gunnison

sage grouse occupy only seven population areas in Colorado and one population area in Utah.  65

Fed. Reg. at 82,311; Pls.' Mat. Facts, Ex. E at 2. The Gunnison Basin in Colorado contains the largest breeding population of the Gunnison sage grouse with up to 3,000 birds, while the total breeding population for the Gunnison sage grouse is approximately 4,000. 65 Fed. Reg. at 82,311. Although the population of the bird has increased in the past several years in the Gunnison Basin, long-term trends since the 1970s have shown "steady declines in the number of males/lek."[3] Id.

Pursuant to the five listing factors contained in 16 U.S.C. § 1533(a)(1), ecologists have identified numerous factors that warrant listing the Gunnison sage grouse under the ESA. The following threats to the habitat or range of the Gunnison sage grouse have been identified: grazing of domestic livestock; degradation of soil quality; fences (both mesh and barbed); conversion of its habitat to agriculture, housing, mining, or by exotic alien plant species; treatment of its habitat to kill or control sagebrush and increase the amount of grass for forging livestock; invasive species; reservoirs and water developments; logging; predation; competition for habitat and food; noise and acoustic interference with mating displays and the ability to detect predators; fire; roads; off road vehicles; military operations; oil and gas operations and prospecting; utility corridors; weather; climate change and global warming; ozone layer depletion; natural factors and environmental variation; effects of chemical agents; acid precipitation; fragmentation of the sage grouse population; and habitat recovery time from threatening events. Pls.' Mat. Facts, Ex. E at 56-83. Regarding the "overutilization" of the species, ecologists have identified the following threats to the Gunnison sage grouse: hunting;

---

[3] "Leks are traditionally used [as] sexual display grounds where males concentrate and females can observe large numbers of male displays, and exercise mate choice." Pls.' Mat. Facts, Ex. E at 10.

falconry, as they are the preferred species for many types of falconry; bird watching and

recreational use; agricultural operations; road kill; scientific studies; and educational purposes.

Id. at 84-86.  In addition, there is also a concern that disease has caused a reduction in the

Gunnsion sage grouse population.  Id. at 87.  Finally, there does not appear to be any effective

regulatory mechanisms to protect these birds, although a 1995 memorandum of agreement

between the state of Colorado and the Secretary requires cooperation and collaboration to protect

native species that are at risk in Colorado.  Id. at 88-97.

**(D)**     **The Gunnison Sage Grouse as a Candidate for Listing and the Plaintiffs' Public Petition to List It Under the ESA**

On January 10, 2000, the FWS sent a letter to the "Gunnison Sage Grouse Working

Group Member[s]" informing them that it had decided to place the Gunnsion sage grouse on its

own candidate list. Pls.' Mat. Facts, Ex. D at 1.  On January 18, 2000, the Regional Director for

the FWS in Region 6 (Mountain-Prairie Region) "initiated the candidate process by signing a

Candidate and Listing Priority Assessment Form for the Gunnison sage grouse in which the

Gunnison sage grouse was assigned a priority of 5 (on a scale of 1 to 12, with 12 having the

lowest priority)."[4]  Defendants' Statement of Material Facts Not in Dispute ("Defs.' Mat. Facts")

at ¶ 1.  Subsequently, on January 25, 2000, the plaintiffs submitted a petition to the FWS to list

the Gunnison sage grouse as "endangered" under the ESA.  Pls.' Mat. Facts at ¶ 6, Ex. E.  On

February 24, 2000, the Regional Director for the FWS in Region 6 responded to the plaintiffs'

petition and informed them that "[i]f this species is included in the next publication of the

---

[4]  While the plaintiffs list the date of this initiation as January 19, 2000, it is clear from examining the plaintiffs' own referenced exhibit, that the date is actually January 18, 2000. See Pls.' Mat Facts, Ex. B at 1.  The defendants point out this error in their Response to Plaintiffs' Statement of Material Facts Not in Dispute at ¶ 3.

Candidate Notice of Review prior to making a 12-month finding on your petition, the CNOR will

constitute a warranted but precluded finding for the grouse . . . If sufficient funds and staffing

become available for processing of administrative findings before the next CNOR is published,

then we will initiate work on your petition at that time." Pls.' Mat. Facts at ¶ 7, Ex. B at 1-2. On

July 20, 2000, in response to a notice by the plaintiffs of their intent to initiate a lawsuit grounded

on violations of the ESA,[5] the FWS advised the plaintiffs that

> On March 15 Director Clark signed the Candidate and Listing Priority
> Assignment Form for the Gunnison sage grouse . . . If the next annual
> Candidate Notice of Review is published in the Federal Register prior to our
> completion of a 12-month finding on your petition, the Candidate Notice of
> Review will constitute a warranted but precluded finding for the grouse, and
> the petitioners would be entitled to challenge that finding pursuant to Section
> 4(b)(3)(C)(ii).

Pls.' Mat. Facts at ¶ 9, Ex. G at 2.  On September 29, 2000, the instant case was filed in this

Court.  On December 28, 2000, the FWS published a "Notice of Designation of the Gunnison

Sage Grouse as a Candidate Species" in the Federal Register.  65 Fed. Reg. 82,310 (Dec. 28,

2000); Pls.' Mat. Facts at ¶ 12, Ex. A.

## II.   Standard of Review

This action was brought pursuant to the ESA's citizen suit provision, 16 U.S.C. §

1540(g), and the APA, 5 U.S.C. § 706.  Because "[a]ctions taken by the FWS pursuant to the

ESA are reviewed as agency actions subject to the standards of review under the APA[,]" Fund

for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995) (citing Las Vegas v. Lujan, 891 F.2d

927, 932 (D.C. Cir. 1989)), this Court must address whether the defendants' actions were

---

[5]  As required by 16 U.S.C. § 1540(g)(2)(C), the plaintiffs apparently provided notices of their intent to sue
on May 2, 2000, September 6, 2000, and October 17, 2000.  See Pls.' Mat. Facts at ¶ 8.

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or

"without observance of procedure required by law[,]" 5 U.S.C. § 706(2)(A), (D).[6]

### III.    Legal Analysis

**(A)    Did the Defendants Violate the ESA by Failing to Issue a 90-Day Finding in Response to the Plaintiffs' Petition to List the Gunnison Sage Grouse?**

The plaintiffs' first claim asserts that the FWS violated the ESA, specifically 16 U.S.C. §

1533(b)(3)(A), when it failed to issue a 90-day finding in response to the plaintiffs' petition to list

the Gunnison sage grouse as an "endangered" species.  Plaintiffs' Memorandum of Points and

Authorities in Support of Motion for Summary Judgment ("Pls.' Mem.") at 11.  The defendants

counter, arguing that the "Gunnison Candidate Notice issued on December 28, 2000, . . . in

everything but its label is the functional and substantive equivalent of a substantial information

finding under the ESA . . . [and thus] Plaintiffs' request for a substantial information finding has

been rendered 'moot'."  Defendants' Memorandum in Opposition to Plaintiffs' Motion for

Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment ("Defs.'

Mem.") at 19.[7]  The plaintiffs take exception with this position.

---

[6]  5 U.S.C. § 706(2) states that

[t]he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be-
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

[7]  In the alternative, defendants assert that they have not violated the ESA because it has not been practicable to make a substantial information finding. Defs.' Mem. at 24.  In other words, the defendants

(continued...)

11

**(1)**      <u>**Plain Language of the ESA's Petition Process Provision**</u>

Upon the filing of a public petition to list a species as "endangered" or "threatened" under

the ESA, 16 U.S.C. § 1533(b)(3)(A) states that

> [t]o the maximum extent practicable, within 90 days after receiving the
> petition of an interested person under section 553(e) of Title 5, to add a species
> to, or to remove a species from, either of the lists published under subsection (c)
> of this section, the Secretary shall make a finding as to whether the petition
> presents substantial scientific or commercial information indicating that the
> petitioned action may be warranted. If such a petition is found to present such
> information, the Secretary shall promptly commence a review of the status
> of the species concerned. The Secretary shall promptly publish each finding
> made under this subparagraph in the Federal Register.

While the defendants assert that the question about compliance with the 90-day requirement is

moot because they subsequently issued their Notice of Designation of the Gunnison Sage Grouse

as a Candidate Species, this Court cannot agree. This is because, although the defendants' Notice

of Designation may constitute what would be contained in a 90-day substantial information

finding, as the Notice concludes that ESA listing is warranted, it certainly does not have the

equivalent effect or result in the same treatment of the Gunnison sage grouse as would be the

case if a substantial information finding had been actually issued.[8] Section 1533(b)(3)(A) of the

---

[7](...continued)
alternatively argue that even if this Court rejects their position that the December 28, 2000 Gunnison Candidate
Notice is equivalent to a 90-day substantial information finding, that they then meet the exception for complying with
the ninety-day period because it was not practicable for them to do so. <u>See</u> 16 U.S.C. § 1533(b)(3)(A). This Court
does not agree. This is because even if it is not practicable to issue a substantial evidence finding within ninety days
of the petition being filed, the Secretary must complete the preliminary substantial information filing within twelve
months, the time deadline by which 16 U.S.C. § 1533(b)(3)(B) must be complied with. <u>See Biodiversity Legal
Found. v. Babbitt</u>, 63 F. Supp. 2d 31 (D.D.C. 1999) (finding that the Secretary violated the ESA by waiting nearly 2
years to issue its preliminary ruling in an effort to delay triggering the 12-month deadline embodied in §
1533(b)(3)(B)). That has not been done here.

     [8] Not only does this Court find that the plaintiffs' claim is not moot because the Notice of Designation fails
to have the same effect as a 90-day preliminary finding, but it also concludes that the defendants are unable to
demonstrate "the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could
(continued...)

ESA requires that if a positive 90-day finding is made by the defendants, they "shall promptly commence a review of the status of the species concerned." This review culminates into and is inextricably linked to the 12-month finding mandated by subsection (B), which states that

> [w]ithin 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted, the Secretary shall make one of the following findings:
>   (i) The petitioned action is not warranted, in which case the Secretary shall promptly publish such finding in the Federal Register;
>   (ii) The petitioned action is warranted, in which case the Secretary shall promptly publish in the Federal Register a general notice and the complete text of a proposed regulation to implement such action in accordance with paragraph (5),
>   (iii) The petitioned action is warranted, but that --
>           (I) the immediate proposal and timely promulgation of a final regulation implementing the petitioned action in accordance with paragraphs (5) and (6) is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and
>           (II) expeditious progress is being made to add qualified species to either of the lists published under subsection (c) of this section and to remove from such lists species for which the protections of this chapter are no longer necessary,
> in which case the Secretary shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based.

The Secretary's duty to make a 12-month finding when a public petition has been filed is a "mandatory, nondiscretionary duty[,]" Envtl. Def. Ctr. v. Babbitt, 73 F.3d 867, 871 (9th Cir. 1995), as the plain language of the ESA states that "the Secretary shall make one of the following findings . . ." 16 U.S.C. § 1533(b)(3)(B) (emphasis added). The Supreme Court has made clear "that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the

---

[8](...continued)

not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000). This is all the more evident when examining the wealth of cases in which the Secretary has sought to avoid complying with the petition process's 90-day and 12-month finding requirements. See cases cited in infra note 9.

subject of the command." Forest Guardians v. Babbitt, 174 F.3d 1178, 1187 (10th Cir. 1999)

(citing United States v. Monsanto, 491 U.S. 600, 607 (1989) ("by using 'shall' in civil forfeiture

statute, 'Congress could not have chosen stronger words to express its intent that forfeiture be

mandatory in cases where the statute applied'"); Pierce v. Underwood, 487 U.S. 552, 569-70

(1988) ("Congress' use of 'shall' in a housing subsidy statute constitutes 'mandatory language'");

Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 n.15 (1981) ("same under Fair

Labor Standards Act"); see also Black's Law Dictionary 1233 (5th ed. 1979) ("As used in statutes

. . . [shall] is generally imperative or mandatory.")).  The plain language of 16 U.S.C. §

1533(b)(3) of the ESA demonstrates that the petition process's 90-day substantial information

finding and 12-month finding are inextricably linked.  On the other hand, the Notice of

Designation issued by the defendants is devoid of such a link.  Therefore, it is clear that the

Notice of Designation of the Gunnison Sage Grouse as a Candidate Species is not the "functional

and substantive equivalent" of a petition process's substantial information finding, because the

plain language of the ESA mandates that a 12-month finding be completed in conjunction with a

substantial information finding, and here that has not been done.

### (2)     Legislative History Underlying the Petition Process and the Imposition of the Time Deadlines

It is clear upon examining the legislative history of the ESA that Congress intended for

petitions filed by the public to list a species to be given priority over the FWS's internal listing

efforts.  Explaining the interrelationship between the petition process and the FWS's internal

efforts, Congress stated that "[a]lthough the Department of the Interior uses a priority system to

determine which of the hundreds of unlisted endangered species should be acted on first, the

petitioning process interrupts the Department's priority system by requiring immediate review."

H.R. Conf. Rep. No. 95-1625, at 5 (1978), reprinted in 1978 U.S.C.C.A.N. 9453, 8455.

In amending the ESA in 1982 to impose mandatory time deadlines by which the Secretary must

act when considering a public petition to list a species as "endangered" or "threatened", Congress

"intended to expedite the decisionmaking process and to ensure prompt action in determining the

status of the many species which may require the protections of the Act." H.R. Conf. Rep. No.

97-835, at 19 (1982), reprinted in 1982 U.S.C.C.A.N. 2860, 2860. To accomplish this objective,

Congress explained that

> these amendments will replace the Secretary's discretion with mandatory,
> nondiscretionary duties. For example, under current law, if a petition presents
> substantial evidence warranting a review of the status of a species, the
> Secretary is to undertake such a review. However, the statute imposes no
> deadlines within which such review is to be completed. In practice, such status
> reviews have often continued indefinitely, sometimes for many years. The
> amendments will force action on listing and delisting proposals by requiring
> that the Secretary, to the maximum extent practicable, within 90 days after
> receiving a petition, publish a finding whether the petition presents substantial
> scientific or commercial information indicating that the petitioned action may be
> warranted. The Secretary must begin a status review when he publishes a
> finding that a petition to list or delist a species presents such substantial
> information . . . If a petition presents substantial information indicating that the
> petitioned listing or delisting may be warranted, the Secretary must, within 12
> months after receiving the petition, make one of three findings and, depending
> upon which finding is made, promptly publish in the Federal Register certain
> items.

H.R. Conf. Rep. No. 97-835, at 20-21 (1982), reprinted in 1982 U.S.C.C.A.N. 2860, 2861-62

(emphasis added).

Therefore, upon examining the plain language of the ESA and the legislative history that

preceded the enactment of the 1982 amendments to the ESA, it is apparent that Congress

intended to afford priority status to public petitions to list a species as "endangered" or

"threatened".  And to accomplish this objective, Congress has established a scheme which

mandates that if a petition is filed by the public, the Secretary is required to publish a preliminary

finding within ninety days, to the maximum extent practicable, detailing whether there exists

substantial information that supports, or fails to support, the listing of a species.  An affirmative

finding that listing "may be warranted" due to the existence of substantial information, leads to

the prompt commencement of a review of the species, resulting in a further finding that must be

completed within twelve months after the petition was filed stating whether ESA listing is

warranted, not warranted, or "warranted but precluded".  16 U.S.C. § 1533(b)(3).

**(3)**     **The Secretary's Non-Compliance with her Mandatory, Non-Discretionary Duties under the Petition Process in this Case**

In this case, over eleven months after the petition was filed, defendants published a

Notice designating the Gunnison sage grouse as a candidate for listing pursuant to their own

internal process, and they now assert that this Notice was equivalent to the petition process's

substantial information finding.  As just indicated, this Court rejects this position.  It is apparent

from the record in this case that the defendants have failed to "promptly commence a review of

the status of the species concerned" and make a 12-month finding as required by 16 U.S.C. §

1533(b)(3)(B) when a petition is submitted by the public, as nearly three years have passed since

the petition was filed and no final action has been taken regarding the listing of the Gunnison

sage grouse as "endangered" or "threatened".  Clearly then, the Gunnison Candidate Notice has

not been treated by the defendants as functionally equivalent to a substantial information finding

because, if it had, a 12-month finding would have been made by now.  Although the defendants

take the position that "[w]hether or not the Service [-the FWS-] has complied with [the 12-

month] requirement . . . is not at issue in this case[,]" they are simply not able to avoid their statutorily mandated responsibilities under the ESA.

Instead, it is apparent that what has occurred is that the defendants have placed the Gunnison sage grouse on their internal candidate list, where it has remained in a virtual "black-hole" with no action having been taken. As will be more substantively addressed below, the defendants' treatment of the plaintiffs' petition under their internal candidate process and application of the PMG to the petition, violates the congressionally imposed mandatory, non-discretionary duties that the Secretary must comply with when the public files a petition to list a species under the ESA.

Therefore, this Court finds that the defendants have violated 16 U.S.C. § 1533(b)(3)(A), in that they failed to publish a preliminary substantial information finding under the petition process. While the Notice of Designation as a Candidate Species may contain the substantive equivalent of what would be contained in a substantial information finding, it is not functionally equivalent because it has allowed the defendants to avoid compliance with their mandatory, non-discretionary duty to make a 12-month finding pursuant to 16 U.S.C. § 1533(b)(3)(B). And while this Court will not require the defendants issue a 90-day substantial information preliminary finding, as the Notice of Designation contains an adequate finding that ESA listing may be warranted and such a duplicative action would unnecessarily waste valuable resources, it will require the defendants to expeditiously issue a 12-month finding as required by 16 U.S.C. § 1533(b)(3)(B).[9]

---

[9] The Court will schedule an evidentiary hearing to address the time table by which the defendants will have to complete and publish its 12-month finding.

**(B)**     **Did the Secretary Comply with Applicable "Notice and Comment" Procedures when Promulgating the PMG?**

Finding that the defendants' treatment of the plaintiffs' petition in this case violated the

ESA, the Court will now turn to the plaintiffs' substantive and procedural challenges of the PMG

policy that treats public petitions to list a species under the ESA as "redundant" if they have

already been identified as a "candidate" for listing under the FWS's internal process.  The Court

finds it appropriate to first address the procedural challenges to the manner in which the PMG

policy was promulgated.  The plaintiffs assert that the defendants failed to comply with 16

U.S.C. § 1533(h), and its "notice and comment" requirement, when promulgating the PMG.  See

Pls.' Mem. at 21-26.  Section 1533(h) states that:

> [t]he Secretary shall establish, and publish in the Federal Register, agency
> guidelines to insure that the purposes of this section are achieved efficiently and
> effectively.  Such guidelines shall include, but are not limited to --
>
>         (1) procedures for recording the receipt and the disposition of petitions
> submitted under subsection (b)(3) of this section;
>         (2) criteria for making the findings required under such subsection with
> respect to petitions;
>         (3) a ranking system to assist in the identification of species that should
> receive priority review under subsection (a)(1) of this section; and
>         (4) a system for developing and implementing, on a priority basis,
> recovery plans under subsection (f) of this section.
>
> The Secretary shall provide to the public notice of, and opportunity to submit
> written comments on, any guideline (including any amendment thereto) proposed
> to be established under this subsection.

The plaintiffs assert that the defendants violated this provision of the ESA when they failed to

publish either the draft or the final versions of the PMG in the Federal Register, but only

published a notice indicating their availability to individuals who desired to obtain a copy of the

draft and final versions of the guideline by submitting a written request to the Division of

Endangered Species.  See Pls.' Mem. at 22 (citing 59 Fed. Reg. 65,781 (Dec. 21, 1994) (notice of

1994 draft PMG); 61 Fed. Reg. 36,075 (July 9, 1996) (notice of 1996 final PMG)).  The

defendants counter that subsection (h) only requires the Secretary to provide notice of the

availability of the PMG, which they did,[10] and rely on the language in the statute which states that

"[t]he Secretary shall provide to the public notice of, and opportunity to submit written

comments on, any guideline . . ."  Defs.' Mem. at 38 (quoting 16 U.S.C. § 1533(h)).  For the

reasons set forth below, the Court rejects the defendants' arguments.

**(1)     The Final Version of the PMG**

It is a general principle of statutory construction that

> [b]ecause statutory language represents the clearest indication of Congressional
> intent, . . . [this Court] must presume that Congress meant precisely what it said.
> Extremely strong, this presumption is rebuttable only in the 'rare cases [in which]
> the literal application of a statute will produce a result demonstrably at odds with
> the intentions of its drafters.'

NPR v. FCC, 254 F.3d 226, 230 (D.C. Cir. 2001) (quoting United States v. Ron Pair Enter., Inc.,

489 U.S. 235, 242 (1989), and citing Qi-Zhuo v. Meissner, 70 F.3d 136, 140 (D.C. Cir. 1995)

("Where . . . the plain language of the statute is clear, the court generally will not inquire further

into its meaning."))·  Here, the plain language of the ESA requires that the "Secretary shall . . .

publish in the Federal Register, agency guidelines [that are established] to insure that the

purposes of [section 1533] are achieved efficiently and effectively . ."  16 U.S.C. § 1533(h)

(emphasis added).

This clear and unambiguous Congressional mandate does not afford the defendants the

---

[10]   The FWS published notices of the availability of both the draft and final versions of the PMG.  See 59
Fed. Reg. 65,781 (Dec. 21, 1994)(draft version); 61 Fed. Reg. 36,075 (July 9, 1996)(final version).

luxury of avoiding their responsibilities under the statute.  And the mandate is for the publication of the actual guidelines established by the Secretary and not just a notice of their availability, as claimed by the defendants.  The Court finds persuasive the plaintiffs' argument that "[h]ad Congress intended a 'Notice of Availability' to suffice, it would have stated so explicitly, as it did in section 10(c) of the ESA."  Pls.' Mem. at 23 n.7.  In that section, Congress provided that "[t]he Secretary shall publish notice in the Federal Register of each application for an exemption or permit which is made under this section."  16 U.S.C. § 1539(c).  Clearly Congress knows how to distinguish between requiring publication of a simple notice, as it did in 16 U.S.C. § 1539(c), and publication of the actual document itself, as it did in 16 U.S.C. § 1533(h).  In this case, Congress mandated the publishing of the final version of agency guidelines in the Federal Register, and thus, the defendants were required to publish the final PMG guideline.

### (2)   The Draft Version of the PMG

What the publication requirement is for the draft version of the PMG is not as clear.  This is because the language of section 1533(h) not only contains the mandatory publication requirement for guidelines that the Court has discussed above, but also language that discusses the public comment process, which states that "[t]he Secretary shall provide to the public notice of, and opportunity to submit written comments on, any guideline (including any amendment thereto) proposed to be established under this subsection."  16 U.S.C. § 1533(h) (emphasis added).  As mentioned above, the defendants rely on this additional language for their position that only a notice of the availability of the draft version of the PMG had to be published in the Federal Register.  Defs.' Mem. at 38.  The Court does not need not address whether the defendants' publication of a notice of availability of the draft PMG satisfied the publication

requirements of section 1533(h) because the Court finds that even if it does satisfy the

publication requirement, it did not provide the public a meaningful opportunity to provide

comment.[11] This conclusion is called for because the draft version of the PMG is substantially

different from the final version of the PMG adopted by the defendants.

The 1994 draft version of the PMG that was made available for public comment, treated

public petitions to list species that had already been designated as a candidate by the FWS in

essentially the same manner in which all public petitions were required to be treated, pursuant to

the petition process outlined in 16 U.S.C. §1533(b)(3)(B) of the ESA. See Pls.' Mat. Facts, Ex. H

at 7-14 (Draft Version of the Endangered Species Petition Management Guidance). Thus, public

petitions to list candidate species were afforded 90-day preliminary findings, and, if applicable,

12-month findings. Id. However, as mentioned above and discussed more substantively below,

the final PMG policy adopted in 1996 by the defendants is substantially different. This new

version of the PMG policy treats public petitions to list species that have already been identified

as candidates for listing by the FWS's own internal process as "redundant[,]" thereby avoiding

compliance with 16 U.S.C. §1533(b)(3)(B) of the ESA and its 90-day substantial information

findings and the 12-month warranted, not warranted, or "warranted, but precluded" findings. See

Defs.' Mem, Ex. 1, Ex. 1 at 8 (Final Version of the Endangered Species Petition Management

Guidance).

---

[11] While the Court finds that it does not have to conclusively determine whether a notice of availability of the draft version of a proposed guideline satisfies the publication requirement of section 1533(h), it notes that the plain language of this publication requirement, that the "Secretary shall establish, and publish in the Federal Register, agency guidelines . . .", does not distinguish between draft and final versions. 16 U.S.C. § 1533(h). Furthermore, from a public policy standpoint, one could argue that the need to publish the draft version of a guideline is as important, or more important, than publishing the final version because the entire comment process is based on the draft version.

For the defendants to so radically alter the process by which they would treat public petitions to list candidate species violates the opportunity to comment requirement of section 1533(h) of the ESA. This is because the "opportunity for comment must be a meaningful opportunity." Gerber v. Norton, 294 F.3d 173, 179 (D.C. Cir. 2002) (finding that the FWS did not provide a "meaningful 'opportunity to comment'" on an application for a permit to harm an endangered species under 16 U.S.C. §§ 1538-1539 because the Service did not make available during the comment period all of the information received in connection with the petition) (citing Am. Med. Ass'n v. Reno, 57 F.3d 1129, 1132-33 (D.C. Cir. 1995); Engine Mfrs. Ass'n v. EPA, 20 F.3d 1177, 1181 (D.C. Cir. 1994); Connecticut Light & Power Co. v. Nuclear Regulatory Comm'n, 673 F.2d 525, 530-31 (D.C. Cir. 1982)). The public is precluded from a meaningful opportunity to participate in the comment process if an agency makes available one version of a guideline, in which it specifically outlines how it will treat public petitions, provides the opportunity to comment on that version, and then adopts a completely different approach in its final guideline, without having provided an opportunity to the public to comment on the adopted version. This is especially so in this case where the defendants only provided a notice of the availability of the draft version of the PMG, which afforded all public petitions to list candidate species identical treatment under 16 U.S.C. § 1533(b)(3)(B), and then adopted the final PMG policy that effectively allows the FWS to ignore certain public petitions.

Therefore, for all of the reasons set forth above, the Court finds that the defendants violated 16 U.S.C. § 1533(h) by the manner in which they promulgated the PMG policy that treats a public petition to list a species under the ESA as "redundant" if the species has already

been identified as a "candidate" for listing under the FWS's internal process.[12]

**(C)**     **Does the PMG Policy Facially Violate 16 U.S.C. § 1533(b)(3)(B) of the ESA?**

The Court will now turn to the facial challenge to the PMG policy, even though it has

concluded that the adoption of the guideline is procedurally flawed.  Aside from challenging the

manner in which the defendants treated the plaintiffs' petition to list the Gunnison sage grouse

under the ESA, they also make a facial challenge to the FWS's policy that facilitates non-

compliance with the petition process by treating such petitions as "redundant" if the species has

already been identified internally as a "candidate" for listing under the ESA.  Again, the

defendants' PMG policy states that

> [a] petition for a candidate species for which the Fish and Wildlife Service
> has lead, inasmuch as the Service has already made a decision regarding the
> species status and assigned it a listing priority, the Service considers such
> candidate species as under petition and covered by a 'warranted but precluded'
> finding under Section [1553](b)(3)(B)(iii) of the Act.  Therefore, a petition
> to list a candidate species is redundant and will be treated as a second
> petition.

Defs.' Mem, Ex. 1, Ex. 1 at 8 (Endangered Species Petition Management Guidance at 5).

This Court must begin its analysis by addressing the defendants' assertion that

> [t]he[re] can be no question here that FWS' Petition Management Guidance
> at issue here is entitled to <u>Chevron</u> deference . . .[as] ESA section [1533(h)]
> expressly directs FWS to issue guidelines such as the PMG to carry out its
> duties under ESA section [1533], and FWS issued the PMG under that
> authority and provided notice and comment in doing so.

Defs.' Mem. at 18 n.10.  As the Ninth Circuit noted in <u>Center for Biological Diversity</u>, if the

PMG

---

[12] Because the Court finds that the defendants violated the "notice and comment" provisions of the ESA, it need not address the plaintiffs' additional procedural claims on this subject, including whether the defendants also violated the APA by the manner in which they adopted the PMG. Pls.' Mem. at 23-26.

policy is supported by the clear intent of Congress under the ESA, 'that is the end of the mater; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' But if the ESA 'is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's [policy] is based on a permissible construction of the statute.'

254 F.3d at 837-38 (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837,

842-43 (1984)). This Court agrees with the Ninth Circuit's conclusion that the ESA "is not at all

ambiguous, but instead is exquisitely clear, concerning what the Secretary must do when she

receives a petition requesting action on a species." Id. at 837. Pursuant to the ESA's petition

process, the Secretary "shall" make a 90-day, if practicable, preliminary substantial information

finding and "shall" make a 12-month finding that the petitioned action is warranted, not

warranted, or "warranted but precluded". 16 U.S.C. § 1533(b)(3)(A)-(B). Clearly there is no

ambiguity about what the Secretary must do when a petition is filed to list a species under the

ESA.

The plaintiffs' facial challenge to the PMG policy goes to the validity of the guideline and

thus the defendants accurately point out that "[t]o prevail in such a facial challenge, [the

plaintiffs] 'must establish that no set of circumstances exists under which the [guideline] would

be valid.'" Reno v. Flores, 507 U.S. 292, 300-01 (1993) (challenge to an IRS regulation as

exceeding the Attorney General's statutory authority) (quoting United States v. Salerno, 481 U.S.

739, 745 (1987)); see also INS v. Nat'l Ctr. for Immigrants' Rights, Inc., 502 U.S. 183, 188

(1991). Despite this relatively high standard by which this Court must review the plaintiffs'

facial challenge, a guideline that allows the defendants to avoid compliance with congressionally

mandated, non-discretionary duties set forth in 16 U.S.C. § 1533(b)(3)(A)-(B) must be found

invalid. See, e.g., Ctr. for Biological Diversity, 254 F.3d at 840 (finding that "the PMG policy violates the plain terms of the ESA").

While the defendants seek to distinguish this case from the Ninth Circuit's opinion in Center for Biological Diversity, 254 F.3d at 833, this Court finds that the legal issues addressed in that case, concerning the relationship between the ESA's internal process and the public petition process, are instructive on how this Court should reconcile those two processes, as what has occurred here is yet another attempt in a long line of cases where the defendants have sought to avoid complying with the ESA.[13] In Center for Biological Diversity, the Chiricahua leopard frog and the Gila chub were candidates for listing since 1991 and 1982, respectively, when in June 1998 the plaintiff filed two petitions requesting ESA protection. 254 F.3d at 836. The Secretary responded that because the species had been designated as "candidate species" in their internal process, the petitions would be considered redundant, pursuant to the PMG policy, and a 90-day preliminary finding would not be made. Id. at 836-37. Twelve months after the petitions were filed, the plaintiff filed suit to compel the Secretary to issue findings under the ESA.[14] The

---

[13]  This case is one in a number of cases in which the defendants have set forth arguments about why they do not have to comply with the petition process's requirements. See Biodiversity Legal Found. v. Badgley, 284 F.3d 1046, 1055 (9th Cir. 2002) (rejecting defendants' position that 90-day determination can be postponed indefinitely if not practicable and finding that both 90-day and 12-month findings 'must be made within one year.'); Forest Guardians v. Babbitt, 174 F.3d 1178, 1181 (10th Cir. 1999) (rejecting Secretary's argument that spending moratorium imposed by Congress made it impossible to meet ESA deadlines and finding that Secretary failed to comply with 'mandatory, non-discretionary duty unambiguously imposed by the ESA'); Biodiversity Legal Found. v. Babbitt, 63 F. Supp. 2d 31, 32 (D.D.C. 1999) (finding that 'it was unlawful for FWS to wait nearly two years before issuing its [90-day] preliminary finding.'); but see Biodiversity Legal Found. v. Babbitt, 146 F.3d 1249, 1252 (10th Cir. 1998) (finding that Secretary had adequately demonstrated impracticability of issuing 90-day preliminary finding due to Congressional funding moratorium); Envtl. Def. Ctr. v. Babbitt, 73 F.3d 867, 872 (9th Cir. 1995) (finding that Secretary failed to comply with nondiscretionary duty to make 12-month finding, but excusing compliance until appropriated funds from Congress were available).

[14]  The Secretary subsequently published a proposed rule in June 2000 to list the frog as an endangered species. Id. at 837 n.4 (citing 65 Fed. Reg. 37,343 (June 14, 2000)).

Ninth Circuit found that the FWS's policy of ignoring its mandatory duties imposed by the ESA when it receives a public petition after the FWS's has already placed that same species on its internal candidate list, violates the ESA in three respects.

First, the Ninth Circuit stated that if, under the petition process, the Secretary determines that the species is "warranted but precluded," she must "promptly publish such finding in the Federal Register, together with <u>a description and evaluation of the reasons and data on which the finding is based</u>." <u>Id.</u> at 838 (quoting 16 U.S.C. § 1533(b)(3)(B)(iii)(emphasis added)). A "warranted but precluded" finding

> has two components. First, it is an admission by the Secretary that a species qualifies for protection -- and that protection is 'warranted' -- under the ESA, an admission which, as noted, might be met by a candidate designation under the PMG policy's revised definition of candidate species. Second, the finding also states that a final rule cannot be issued right away, for administrative reasons, thereby temporarily excusing the Secretary from issuing a final rule.

<u>Id.</u> The <u>Center for Biological Diversity</u> Court noted that the Secretary could only invoke this finding under narrowly prescribed circumstances, as "Congress emphasized that providing for the 'warranted but precluded' designation was not designed to justify 'the foot-dragging efforts of a delinquent agency.'" <u>Id.</u> (quoting H.R. Conf. Rep. No. 97-835, at 22 (1982), <u>reprinted in</u> 1982 U.S.C.C.A.N. 2860, 2863). For this reason, the Ninth Circuit stated that

> the Secretary must show that she is 'actively working on other listings and delistings and must determine and publish a finding that such other work has resulted in pending proposals which <u>actually</u> preclude[d] [her] proposing the petitioned action at that time.' For that reason, 'the Secretary must determine and present evidence that [s]he is, in fact, making expeditious progress in the process of listing and delisting other species.'

<u>Id.</u> (emphasis added). The <u>Center for Biological Diversity</u> Court concluded that the PMG policy, which allows the Secretary to avoid publishing such an explanation in the Federal Register,

violates the ESA's petition process requirements specified in 16 U.S.C. § 1533(b)(3)(B)(iii) because with a designation as a "candidate" under the internal process, the Secretary "need not -- and does not -- explain why more immediate action is not appropriate."[15] Id. (citations omitted).

Second, the Ninth Circuit noted that the "warranted but precluded" finding is subject to judicial review, and without a detailed finding, a reviewing court has "no basis to evaluate the Secretary's conclusion that immediate action is precluded by other more urgent matters." Id. at 839. Finally, as this Court mentioned above, the Center for Biological Diversity Court commented that the Secretary's internal process of placing species on a candidate list results in "potentially qualified species . . . [remaining] on candidate lists for extraordinarily long periods before becoming the subject of protective rules." Thus, by placing species on the candidate list, and ignoring the statutory deadlines contained in the petition process, it is unknown how long the administrative process will take before a decision is made whether to list a species. "It was in precisely these situations that Congress intended the petitioning process to 'interrupt[] the department's priority system by requiring immediate review.'" Id. at 840 (quoting H.R. Conf. Rep. No. 95-1625, at 5 (1978), reprinted in 1978 U.S.C.C.A.N. 9453, 8455 (emphasis added)).

The defendants here assert that the PMG was implemented pursuant to 16 U.S.C. § 1553(h), which states that "[t]he Secretary shall establish, and publish in the Federal Register, agency guidelines to insure that the purposes of this section are achieved efficiently and

---

[15] As an example, the Court referenced a typical 12-month finding that specifically sets forth those species that had a greater listing priority. See, e.g., 60 Fed. Reg. 15,281 (March 23, 1995) ("12-Month Finding for a Petition to List the Southern Rocky Mountain Population of the Boreal Toad as Endangered"). The 12-month Petition Finding for the Boreal Toad specifically detailed that the reason why this species was "warranted but precluded[,]" indicating that there were "three candidate species in Colorado that appear to be more in need of listing, thus precluding the listing of the southern Rocky Mountain population of the boreal toad." 60 Fed. Reg. 15,281, 15,283 (March 23, 1995). The Secretary went on to discuss and list the mountain plover, the Preble's meadow jumping mouse, and a plant named Phacelia submutica, as having higher listing priorities.

effectively." As support for the legality of the PMG policy, the defendants declare that it "is efficient and effective to eliminate duplicative work and expense -- especially considering the insufficient funds that Congress has provided to accomplish all its [ESA] listing actions." Defs.' Mem. at 34 (citing 64 Fed. Reg. 57,114, 57,117 (Oct. 22, 1999) (stating that the FWS is "unable to comply with all of the requirements of the Act at current funding levels.")). While this Court sympathizes with the Department of Interior's purported funding dilemma, it is beyond this Court's authority to excuse congressional mandates for budgetary reasons. Redress must be sought from Congress, not the courts.

Accordingly, this Court is compelled to conclude that the PMG policy, which facilitates the FWS's non-compliance with the congressionally mandated requirements of the petition process, is invalid. As discussed above, the plain language and the legislative history of the ESA are abundantly self-evident: Congress intended to prevent excessive delays in addressing petitions to list species under the ESA. Thus, Congress implemented a system that requires the Secretary to issue judicially reviewable findings within specified time deadlines, which either list the species; refuses to list the species; or, refuses to immediately list the species only because other species have greater listing priority, provided that an explanation detailing why those species have greater priority is provided. Because this PMG policy allows the Secretary to ignore these statutorily mandated provisions of the ESA, this Court must find the PMG's provision that treats public petitions as "redundant" if a species has already been designated as a candidate for listing pursuant to the Secretary's internal process, is invalid.

## IV.   Conclusion

For the aforementioned reasons, this Court finds that the defendants have violated the

28

ESA by failing to make the mandatory findings as required by 16 U.S.C. § 1533(b)(3).  Thus, the

Court will require that the defendants issue and publish in the Federal Register their finding as to

whether the Gunnison sage grouse qualifies for ESA listing.[16]  In addition, the Court finds that

the FWS's Petition Management Guidance policy, that treats public petitions as redundant if a

species has already been placed on its candidate list pursuant to its internal process, violates the

ESA's "notice and comment" requirement embodied in 16 U.S.C. § 1533(h) and therefore is

procedurally flawed.  Finally, the Court also finds that the FWS's Petition Management Guidance

policy is facially invalid because it allows the defendants to avoid their mandatory, non-

discretionary obligations mandated by 16 U.S.C. § 1533(b)(3)(B) of the ESA.[17]


       **SO ORDERED** this 30th day of January, 2003.


                                     REGGIE B. WALTON
                                  United States District Judge

---

[16] Requiring the defendants to issue and publish a finding pursuant to 16 U.S.C. § 1533(b) is consistent with what other courts have done when the Secretary has failed to comply with this provision of the ESA.  See, e.g., Forest Guardians v. Babbitt, 174 F.3d 1178, 1193 (10th Cir. 1999) (finding that the "Secretary must be ordered to comply with his statutory duty to publish a final regulation" and remanding the case to the district court to order the Secretary to publish a final regulation "as soon as possible"); accord Envtl. Def. Ctr. v. Babbitt, 73 F.3d 867, 872 (9th Cir. 1995) (finding that the Secretary failed to take "final action" on a petition for listing of a species within one year of it being filed and requiring that the Secretary make such a finding once it has the necessary funds).

[17] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN LANDS ALLIANCE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GALE A. NORTON, | ) |
| Secretary of the Department of the Interior, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 00-2339 (RBW)

**FILED**

**JAN 3 1 2003**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### ORDER

Upon consideration of the parties' cross-motions for summary judgment, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby

**ORDERED** that the plaintiffs' motion for summary judgment is **GRANTED** as set forth herein. It is

**FURTHER ORDERED** that the defendants' motion for summary judgment is **DENIED**. It is

**FURTHER ORDERED** that the Secretary of the Department of the Interior ("Secretary") and the Director of the United States Fish and Wildlife Service ("FWS"), in their official capacities, have failed to make the required findings pursuant to 16 U.S.C. § 1533(b)(3) (2000) of the Endangered Species Act ("ESA"). A hearing shall be held on Friday, February 14, 2003, at 11:00 a.m., for the Court to address when the defendants must comply with their obligation to issue a finding pursuant to 16 U.S.C. § 1533(b)(3)(B) and the plaintiffs' request for "reasonable fees, costs, and expenses, including attorneys fees, associated with this litigation"





pursuant to 16 U.S.C. § 1540(g)(4) (2000).  It is

**DECLARED** and **DECREED** that the FWS's Petition Management Guidance policy that treats a public petition to list a species under the ESA as "redundant" if the species has already been identified as a "candidate" for listing under the FWS's internal process violates the "notice and comment" provisions of 16 U.S.C. § 1533(h) of the ESA.  It is

**DECLARED** and **DECREED** that the FWS's Petition Management Guidance policy that treats a public petition to list a species under the ESA as "redundant" if the species has  already been identified as a "candidate" for listing under the FWS's internal process violates 16 U.S.C. § 1533(b)(3)(B) of the ESA because it allows the defendants to avoid their mandatory, non-discretionary duties to issue findings when public petitions are submitted pursuant to this statute.

**SO ORDERED** this 30th day of January, 2003.

REGGIE B. WALTON
United States District Judge

Copies to:

Michael Axline, Esq.
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401

Debra S. Katz, Esq.
Ari M. Wilkenfeld, Esq.
Bernabei & Katz, PLC
1773 T Street, N.W.
Washington, D.C. 20009

Seth M. Barsky, Esq.
Mauricia M.M. Baca
U.S. Department of Justice
Wildlife & Marine Resources Section
Environment & Natural Resources Division
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369

Thomas Graf, Esq.
United States Department of the Interior
Office of the Solicitor
Rocky Mountain Regional Office
755 Parfet Street, Suite 151
Lakewood, CO 80215